**CALIFORNIA STEEL AND TUBE, Plaintiff,**

v.

**KAISER STEEL CORPORATION, Defendant.**

**No. 75–3216–AAH.**

United States District Court, C. D. California.

April 26, 1979.

266

Thelen, Marrin, Johnson & Bridges by Terry M. Burt, Los Angeles, Cal., for plaintiff.

Blecher, Collins & Hoecker by Martin J. Trupiano, Los Angeles, Cal., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

HAUK, District Judge.

The Court having reviewed the memoranda, affidavits and other pleadings and papers filed in connection with defendant's motion for summary judgment and having heard argument of counsel, and having carefully analyzed and considered the same, now makes and enters its findings of fact, conclusions of law and order thereon as follows:

## FINDINGS OF FACT

1. Plaintiff California Steel and Tube ("CS&T") is a California corporation engaged in the manufacture and sale of electric resistance welded mechanical and structural steel tubing ("ERWMSST") in Southern California.

2. Defendant Kaiser Steel Corporation ("Kaiser") is an integrated producer of steel mill products with its principal place of business in the State of California.

3. These proceedings are instituted pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) to secure damages for the defendant's alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Sections 3 and 7 of the Clayton Act (15 U.S.C. §§ 14, 18).

4. There is now, and has been at all times relevant herein, a continuous and uninterrupted flow of steel mill products and ERWMSST in interstate commerce which has been directly and substantially affected by the acts of plaintiff and defendant set forth herein.

5. On or about March 31, 1970, Kaiser acquired the assets of MSL Tubing and Steel Co. ("MSL"), a division of MSL Industries, Inc., and renamed it Kaiser Steel Tubing ("KST").

6. Prior to March 31, 1970, MSL was engaged in the manufacture and sale of ERWMSST and in competition with CS&T.

7. MSL was also engaged in the steel warehousing business and operated what is known in the trade as a steel service center.

8. After the acquisition of MSL by Kaiser, KST continued the business of MSL.

9. ERWMSST is a particular type of welded steel tubing manufactured from coils of sheet steel into different diameter, gauges and shapes according to customer orders.

10. ERWMSST is the relevant product market. Plaintiff's contention that there is a relevant submarket consisting of domestically manufactured mechanical steel tubing would not, if accepted, alter the following findings and conclusions.

11. All ERWMSST is initially round, but it can be processed further into square or rectangular shapes.

12. ERWMSST is made from sheet steel coils, which come in a variety of widths, gauges and finishes.

13. The principal types of coils used in ERWMSST production are hot rolled pickled and oiled ("HRPO"), cold rolled ("CR") and galvanized.

14. Defendant Kaiser makes all three types of coils as do the major domestic and foreign producers of steel mill products.

15. For purposes of this motion the relevant geographic market for ERWMSST is the eleven western states: Arizona, California, Colorado, Idaho, Montana, Oregon, New Mexico, Texas, Utah, Washington and Wyoming.

16. In 1970 the major domestic producers located in this market were CS&T, MSL/KST, Cyprus Tube & Conduit, Harris Tube, Pacific Tube and Western Tube & Conduit.

17. In 1971 Bernard Epps & Co. entered the market, and in 1976 Alpha Tube also entered the ERWMSST market.

18. In addition there are, and always have been, other domestic producers outside the eleven western states who ship into the area, captive producers within the eleven western states, and substantial volumes of imported ERWMSST.

19. Plaintiff has produced no evidence on the market shares of producers in the ERWMSST market but has only presented data for the domestically manufactured mechanical tubing submarket. That data indicates that in the seven years since the acquisition, CS&T has increased its market share from 14% to 16%, KST's market share has declined dramatically (40% to 22%), and a new entrant (Bernard Epps & Co.) has increased from 0% to 26%.

20. The evidence that is available on the ERWMSST market indicates that the market shares of domestic producers are smaller but reflect the same general trends as in the submarket.

21. In 1976 Bernard Epps & Co. became the largest producer of ERWMSST and domestically manufactured mechanical tubing, and KST slipped to second place in both the market and submarket.

22. CS&T, on the other hand, has risen from being the fourth largest in 1970 to become the third largest in 1976.

23. As a result of these changes, the ERWMSST market and submarket have become less concentrated and more competitive since 1970.

24. In the supply line, the relevant geographic market is at least national, and the relevant product market is all sheet steel useable for tubing, including secondary and prime. Plaintiff's contention that the relevant geographic submarket for sheet steel is limited to Southern California, if accepted, would not alter these findings and conclusions.

25. In the national market, Kaiser's market share has always been under 5%. In the Southern California submarket Kaiser's share of total shipments varied between 19.8% and 30.8%.

26. Imports have become increasingly important in these sheet steel markets since 1960, and since 1970 Japanese imports alone have exceeded Kaiser's total production by factors as high as six in some years.

27. Considering either the sheet steel national market or plaintiff's proposed submarket, Kaiser did not have monopoly power in sheet steel or the ability to raise the market price of sheet steel.

28. The sheet steel market and submarket, like the ERWMSST market and submarket, is a competitive one.

29. Plaintiff's proffer of opinion evidence on the issues of market power in the sheet steel market and predatory pricing of tubing (through Dr. Marshall) is untimely and should be excluded from the record. Defendant, however, had an opportunity to reply to this proffer, and the Court has considered Dr. Marshall's opinions. The Court finds that Dr. Marshall's opinion evidence is insufficient to create a triable issue of fact on the issues of market power in the sheet steel markets and predatory pricing of either ERWMSST or domestically manufactured mechanical steel tubing. Dr. Marshall is not an accountant but an economist who is simply not qualified to examine and analyze the accounting books and records of the defendant with the expertise necessary to obtain the cost and price data which are absolutely required for any possible demonstration of predatory pricing below marginal cost.

30. Plaintiff's profit margin decreased slightly the first year after the acquisition but rose steadily thereafter.

31. There is no evidence that any of these fluctuations in plaintiff's margins were causally related to the acquisition or any conduct by Kaiser.

32. With the exception of the period of short supply of sheet steel in 1973–1974, plaintiff enjoyed lower material costs than KST and had higher profit margins.

33. Prior to the acquisition of KST, CS&T had not been able to buy secondary sheet steel from Kaiser, and this policy continued after the acquisition.

34. KST was able to buy Kaiser secondary sheet steel but this was merely a continuation of the relationship previously enjoyed by MSL.

35. KST never used more Kaiser secondary sheet steel in its tubing operations than had been available to MSL.

36. During the steel shortage of 1973–1974 CS&T was unable to buy Kaiser prime sheet steel; however, this was because Kaiser, like all steel producers during that period, was on an allocation program.

37. CS&T did not qualify under the allocation program because it did not have a significant buying history with Kaiser. The only evidence before this Court is that CS&T did not have a significant buying history from Kaiser because CS&T demanded price concessions from Kaiser that Kaiser was not willing to grant to the trade or to CS&T on a favored basis.

38. CS&T did have a buying history with U.S. Steel and C. Itoh and did receive substantial allocations from them and others.

39. During the shortage CS&T received more sheet steel than ever before in its history.

40. CS&T had idle ERWMSST and manufacturing capacity during the shortage, but this was because it chose to sell substantial quantities of the sheet steel it had instead of using it to produce ERWMSST.

41. There is no evidence of any group boycotts or concerted refusals to deal in this case.

42. There is no evidence in this case of any specific intent on Kaiser's part to monopolize the ERWMSST market or any submarket thereof.

43. There is also no evidence that there ever existed a dangerous probability that Kaiser would or could successfully monopolize the ERWMSST market or any submarket thereof.

44. In all respects in which the findings of fact may be deemed to be conclusions of law, they are hereby incorporated as though they were and are conclusions of law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the causes of action stated in the complaint.

2. There is no genuine issue of material fact and defendant is entitled to judgment as a matter of law.

3. The acquisition of MSL by Kaiser did not and does not threaten to lessen competition or create a monopoly in the ERWMSST market or any submarket.

4. Kaiser does not have a monopoly in the sheet steel market or submarket.

5. KST does not have a monopoly in the ERWMSST market or submarket.

6. Defendant has not attempted to monopolize the ERWMSST market or submarket.

7. Defendant has not engaged in predatory practices in the ERWMSST market or submarket. The law in this Circuit is clear—before the plaintiff can prove predatory pricing, it must initially show that the defendant has set its prices below marginal cost. *See Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848, 857–58 (9th Cir. 1977), *cert. denied*, —— U.S. ——, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1358 (9th Cir. 1976), *cert. denied*, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). Average variable cost may be used if it approximates marginal cost. *William Inglis & Sons v. ITT Continental Baking Co.*, 461 F.Supp. 410, 418 (N.D.Cal. 1978). As set forth in the Findings of Fact, par. 29, Dr. Marshall is an economist, not an accountant, and therefore, is not qualified to analyze and synthesize accounting data from the books and records of the defendant, which accounting data are essential to any sort of expert testimony on predatory pricing below marginal cost. Fed.R.Evid. 104, 701, 702.

In any event, his opinion evidence is insufficient to create any triable issues of fact as to market power in the sheet steel markets and predatory pricing of ERWMSST or domestically manufactured mechanical steel tubing. Dr. Marshall offers only a conclusionary opinion, without any valid supporting cost or pricing data, that defendant engaged in sales below "average variable costs." He does not even mention "marginal costs," nor does he attempt to demonstrate that the so-called "average variable costs" approximate "marginal costs." Moreover, the document to which Dr. Marshall specifically refers in support of his conclusion regarding below cost pricing includes fixed costs in its computations and, therefore, is not a sufficient basis for that conclusion. *See Janich Bros., Inc. v. American Distilling Co., supra*, 570 F.2d at 858. In this posture, Dr. Marshall's opinion is not sufficient to let the case go to a jury. *Id.*

8. Defendant has not engaged in any concerted activity in restraint of trade in the ERWMSST or sheet steel markets or submarkets.

9. CS&T has sustained no antitrust injury causally related to any acts of defendant in the ERWMSST market or submarket.

10. In all respects in which the conclusions of law may be deemed to be findings of fact, they are hereby incorporated as though they were and are findings of fact.

## ORDER

1. Let Summary Judgment be entered in favor of the defendant and against the plaintiff.

## SUMMARY JUDGMENT

The Court having made and entered its findings of fact, conclusions of law and order thereon,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. That Summary Judgment be and the same hereby is made and entered in favor of defendant and against plaintiff.

2. That the complaint of plaintiff herein, and each and every cause of action therein alleged or attempted to be alleged is and are hereby dismissed on the merits with prejudice.

3. That defendant shall have and recover its costs of suit incurred herein in the amount of $————.